**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

AISHA ARMER,

Plaintiff,

v.

BROOKDALE SENIOR LIVING COMMUNITIES, INC. and BROOKDALE EMPLOYEE SERVICES LLC,

Defendants.

**COMPLAINT AND JURY DEMAND**

Plaintiff Aisha Armer (herein "Ms. Armer" or "Plaintiff"), by and through undersigned counsel, files this Complaint against Brookdale Senior Living Communities, Inc. and Brookdale Employee Services LLC (herein "Brookdale" or "Defendants").

**I.  NATURE OF THE ACTION**

Aisha Armer suffered a medical emergency when she was a teenager, which left her with a disability. This disability has impacted her gait and speech, which has changed the way the world interacts with Ms. Armer; ever since, like others with her same disability, she has had to navigate unfair stereotypes about her cognitive abilities and her sobriety. Brookdale holds itself out as the largest senior living provider in the country and claims to be an equal opportunity employer. Ms. Armer found great fulfillment caring for the elderly residents at Brookdale's Highlands Ranch facility, but she was subjected to discrimination and fired because of her disability. This lawsuit is an action to correct the unlawful employment practices of Defendants

and to provide appropriate relief to Aisha Armer for violations of her rights under Federal and State laws.

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction under this Claim for Relief pursuant to 28 U.S.C. § 1331 and § 1343, 42 U.S.C. § 12117 of the Americans with Disabilities Act of 1990.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the employment practices alleged to be unlawful were committed in the District of Colorado.

## III. ADMINISTRATIVE PREREQUISITES

3. Ms. Armer filed a Charge of Discrimination with the EEOC ("EEOC Charge") against Defendant Brookdale Senior Living (Charge No. 32A-2023-00576) alleging discrimination based on her disability.

4. The EEOC issued a Notice of Right to Sue for Plaintiff on May 1, 2024.

## IV. PARTIES

5. Plaintiff Aisha Armer is a resident of Highlands Ranch, Colorado.

6. Defendants are an American-owned for-profit corporation that is authorized to do business in Colorado.

7. Brookdale Highlands Ranch is a trade name of Brookdale Senior Living Communities, Inc.

8. Brookdale Senior Living Communities Inc. is the controlling company for Brookdale Employee Services, LLC, and was identified as the proper Respondent during the administrative process.

9. Brookdale Employee Services, LLC is the employer listed on Ms. Armer's paystubs.

10. At all relevant times, Defendants have continuously been doing business in the State of Colorado and have continuously had at least 15 employees.

11. At all relevant times, Defendants have been a covered entity under the ADA.

## V.   FACTUAL ALLEGATIONS

12. Ms. Armer was hired at Brookdale Highlands Ranch in July 2022 as a Caregiver.

13. Prior to beginning work at Brookdale, Ms. Armer suffered four strokes at only 18 years old, and was thereafter diagnosed with ataxia, a degenerative disease of the nervous system.

14. Ataxia symptoms cause issues with clumsy movements, balance and coordination, slurred speech, and a wide gait.

15. While these are common manifestations of ataxia symptoms, severe symptoms of ataxia may mimic "drunkenness" to an uninformed observer.

16. Following her ataxia diagnosis, Ms. Armer had to relearn to speak while also learning to overcome the biases against her because of her disability.

17. Ms. Armer's ataxia symptoms personally affect her balance, coordination, speech, and ambulatory gait.

18. Notwithstanding the physical symptoms of Ms. Armer's disability, Ms. Armer most significantly suffers from her disability because of discrimination, including false and unjust assumptions regarding her sobriety or cognitive abilities.

19. Upon starting at Brookdale, Ms. Armer was often mocked by coworkers making jokes that she was "drunk" because of her ataxia symptoms, like her slurred speech.

20. Ms. Armer clearly explained her speech and ambulation difficulties were symptoms of her disability, but despite this, her coworkers' mockery and comments persisted.

21. In addition to informing her coworkers, Ms. Armer specifically informed her supervisor, Head Nurse Julia (last name unknown), about her disability and symptoms.

22. The Head Nurse promptly informed members of Brookdale's management team about Ms. Armer's disability.

23. Ms. Armer typically worked for Brookdale from 2:00 p.m. – 10:00 p.m. with Wednesdays and Saturdays off.

24. On Sunday, October 9, 2022, Ms. Armer was scheduled to work her typical hours from 2:00 p.m. – 10:00 p.m.

25. As Ms. Armer was finishing her shift, Bree Tholkes ("Ms. Tholkes") asked her to stay late because Brookdale was short staffed for the night shift.

26. Ms. Armer's ataxia symptoms were generally exacerbated by her tiredness at night-time, but she agreed to push herself and stay until 2:00 a.m. to help; this was the latest she felt she could physically endure.

27. Ms. Tholkes called Manager Brooke Gonzales at 10:00 p.m. to get approval for Ms. Armer to work extra hours.

28. Ms. Armer worked until 2:00 a.m., as Ms. Tholkes had requested, and then returned home to rest after working 12 hours.

29. On October 10, 2022, Business Office Coordinator Brooke Gonzales called Ms. Armer into her office and accused her of being drunk at work the night before.

30. Ms. Gonzales knew that Ms. Armer had ataxia, and that Ms. Armer's symptoms sometimes mimic those of an inebriated person.

31. Ms. Armer was upset, embarrassed, and alarmed by this accusation because she had never and would never come to work drunk.

32. Ms. Armer valued her job at Brookdale and the residents she cared for.

33. Ms. Armer was a loyal and successful employee at Brookdale and had never faced any discipline prior to this accusation.

34. Furthermore, Ms. Armer was humiliated that her ataxia symptoms had been misrepresented as misconduct, especially because she had consistently been the target of discriminatory comments regarding her disability and her disability was commonly known by Brookdale employees.

35. Ultimately, Ms. Armer provided a written statement in hopes of clarifying any confusion and avoiding further confrontation.

36. On October 10, 2022, Brookdale suspended Ms. Armer based on these allegations and conducted an "investigation."

37. Throughout the 2-day-long "investigation," Brookdale provided no explanation or evidence showing efforts to substantiate the truthfulness of allegations against Ms. Armer.

38. Brookdale never tested Ms. Armer to evaluate if she had alcohol in her system.

39. Brookdale never provided any video footage to show Ms. Armer drinking.

40. Ms. Tholkes, who had asked Ms. Armer to stay late on the night of the alleged misconduct, did not contemporaneously report Ms. Armer for presenting intoxicated or smelling of alcohol that night.

41. Following the "investigation," Brookdale falsely claimed Ms. Armer admitted to being intoxicated at work.

42. In fact, Ms. Armer truthfully disclosed to Ms. Gonzalez that on her day off on October 8, 2022, she had two beers between 5:00 p.m. and 7:00 p.m. to celebrate her birthday, long before she started her shift at 2 p.m. October 9, 2022.

43. Ms. Armer voluntarily disclosed this information to be transparent in hopes of keeping the job she loved.

44. Ms. Armer continued to protest Brookdale's allegations and reiterated that the well-known symptoms of her disability resembled drunkenness, and that she had not been drunk at work.

45. Ms. Armer reminded Brookdale that she had been mocked by coworkers many times for "acting drunk," despite repeatedly explaining this was the manifestation of her disability.

46. Though there are cameras in the facility, Brookdale did not watch video footage from October 9 or 10, 2022, in its investigation of Ms. Armer, and Brookdale cannot produce that video footage because it allowed the footage to be destroyed.

47. On October 12, 2022, Brookdale terminated Ms. Armer, in consultation with Corporate Human Resources.

48. Ms. Armer filed a charge of discrimination with the Equal Employment Opportunity Commission on May 8, 2023.

**FIRST CLAIM FOR RELIEF**
**Disability Discrimination in Violation of the Americans with Disabilities Act, as Amended.**

49. Ms. Armer hereby incorporates by reference all previous paragraphs as though fully set forth herein.

50. Ms. Armer's ataxia substantially limited one or more of her major life activities, including, but not limited to, working, eating, sleeping, lifting, and caring for herself.

51.     Ms. Armer is a qualified individual with a disability and, therefore, entitled to the protections of the Americans with Disabilities Act, as amended.

52.     Defendants are required to abide by the Americans with Disabilities Act, as amended.

53.     Ms. Armer became disabled following a series of strokes prior to her employment with Defendant.

54.     Ms. Armer was able to complete all the essential functions of her job, and never requested a reasonable accommodation.

55.     Ms. Armer's symptoms of her disability were known by Defendants, because they are obvious and because she voluntarily disclosed her disability and symptoms.

56.     Even though Brookdale claims to exercise a culture of "compassionate caring" as a caregiving facility, Defendants' treatment of Ms. Armer was neither compassionate nor caring when Defendants terminated Ms. Armer based on the false allegation of intoxication.

57.     Defendants' employees often made intentional, discriminatory comments about Ms. Armer's disability that she "seemed drunk" or "walked funny" despite knowledge of her ataxia.

58.     Defendants terminated Ms. Armer by intentionally misconstruing the manifestation of Ms. Armer's disability as misconduct.

59.     Ultimately, the Defendants' termination of Ms. Armer was motivated by Ms. Armer's disability, and it was, therefore, discriminatory in violation of the Americans with Disabilities Act, as Amended.

60.     Defendants acted intentionally, with malice or reckless indifference to the federally protected rights of Ms. Armer.

61.     Due to Defendants' unlawful employment practices, Ms. Armer has suffered damages.

WHEREFORE, for the reasons stated above, Plaintiff respectfully requests that this Honorable Court enter a judgment to make Plaintiff whole as follows:

a. An award of actual damages in amount to be determined at trial, including lost wages,

b. Past and future nonpecuniary damages;

c. An award of exemplary or punitive damages;

d. An award of reasonable attorneys' fees and costs;

e. An award of Plaintiff's pre- and post-judgment interest; and

f. Ordering any such further relief as this Court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 23rd day of July, 2024.

/s/ *Rachel E. Ellis*
Rachel E. Ellis
Livelihood Law, LLC
12015 E. 46th Avenue, Suite 240
Denver, CO 80239
Phone: (720) 465-6972
Email: ree@livelihoodlaw.com